UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **Alvaro Ramirez Moreno,** | CASE NO. 4:26 CV 275 |
| Petitioner, | JUDGE PATRICIA A. GAUGHAN |
| vs. | |
| **Robert Lynch, Director of Detroit Field Office, U.S. Immigration and Customs Enforcement, et al.,** | **Memorandum Opinion and Order** |
| Respondents. | |

# INTRODUCTION

This matter is before the Court upon Petitioner Alvaro Ramirez Moreno's Petition for Writ of Habeas Corpus (Doc. 1). Petitioner seeks review of his detention by Immigration and Customs Enforcement during his removal proceedings. For the reasons that follow, the Petition for Writ of Habeas Corpus is GRANTED.

# BACKGROUND

Petitioner Alvaro Ramirez Moreno ("Petitioner") is a native of Mexico. He entered the United States in 2005 without inspection as an unaccompanied minor and remained in the country

since that time.[1] On January 16, 2026, Petitioner was detained by Respondents at his place of employment in Akron, Ohio. He remains detained at present.

On January 29, 2026, the Cleveland Immigration Court ("Immigration Court") denied Petitioner's request for a custody redetermination, citing lack of jurisdiction. The Immigration Court's claimed lack of jurisdiction comes in the wake of a September 5, 2025 Board of Immigration Appeals ("BIA") decision in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), which proclaimed—for the first time in immigration history—that any person who crossed the border unlawfully and is later taken into immigration detention is no longer eligible for release on bond. Before that decision, the official position of the BIA was that immigration judges had discretion to grant persons release on bond if the person did not have a disqualifying criminal record and the judge was satisfied, after a hearing, that the person was not a danger to the community or a flight risk.

Related, on July 8, 2025, the Immigration Customs and Enforcement Agency ("ICE") issued internal "interim guidance," which changed the agency's longstanding interpretation of which noncitizens are eligible for release on bond during removal proceedings. Before July 8, 2025, a noncitizen in Petitioner's position would have been subject to detainment pursuant to 8 U.S.C. § 1226, and eligible for release from custody during removal proceedings. After July 8, 2025,

---

[1] Petitioner alleges that he is part of the class in *Maldonado Bautista v. Santacruz*, No. 5:25-CV-01873 (C.D. Cal. 2025). Because this Court finds that Petitioner is otherwise entitled to relief, it need not reach the effect of *Maldonado Bautista* here.

noncitizens in Petitioner's position are treated as detained pursuant to 8 U.S.C. § 1225, which requires near mandatory detention without affording any bond hearing.[2]

On February 2, 2026, Petitioner filed the instant petition for a writ of habeas corpus ("Petition") against Respondents. Respondents filed a Return of Writ.

**DISCUSSION**

Petitioner seeks a writ of habeas corpus, arguing that the manner of his continued detention by Respondents violates both the Due Process Clause of the Fifth Amendment and the plain language of the Immigration and Nationality Act ("INA"). Respondents contend the Petition should be dismissed because: (1) Petitioner failed to exhaust his administrative remedies; or (2) Petitioner was properly detained under 8 U.S.C. § 1225, which mandates his detention and does not afford him a bond hearing.

### A. Petitioner Was Not Required To Exhaust His Administrative Remedies

Before reaching the merits of the Petition, this Court must address whether the Petition should be dismissed, as Respondents contend, because Petitioner did not exhaust available administrative remedies. Petitioner did timely appeal the Immigration Court's decision to the BIA but argues that requiring Petitioner to wait for the conclusion of that appeal before seeking habeas relief would be futile. This Court agrees with Petitioner.

Where, as here, no applicable statute or rule mandates administrative exhaustion, the decision whether to require exhaustion is within the district court's "sound judicial discretion."

---

[2] The Department of Homeland security retains authority to, in its discretion, exercise its parole authority to temporarily release persons detained "on a case-by-case basis for urgent humanitarian reasons or significant public benefit.". 8 U.S.C. § 1182(d)(5)(A).

*Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013) (citation omitted). This discretion is referred to as "prudential" exhaustion, *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 746 (6th Cir. 2019), and such a court-made exhaustion rule must comply with statutory schemes and congressional intent. *Shearson*, 725 F.3d at 593–94.

Notably, the Sixth Circuit has not yet decided whether courts should impose prudential exhaustion in the context of a noncitizen's habeas petition for unlawful mandatory detention. *See Pizarro Reyes v. Raycraft*, 2025 WL 2609425, at *3 (E.D. Mich. Sept. 9, 2025) (citing *Hernandez v. U.S. Dep't of Homeland Sec.*, 2025 WL 2444114, at *8 (N.D. Ohio Aug. 25, 2025)). Without guidance, the courts in this circuit have largely applied Ninth Circuit precedent but have reached conflicting results. *Compare Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 778 (N.D. Ohio 2025) ("Here, all three [Ninth Circuit] factors weigh against requiring exhaustion."), *with Monroy Villalta v. Greene*, 794 F. Supp. 3d 528, 531 (N.D. Ohio 2025) (dismissing petition for failing to exhaust available administrative remedies).

> Under the relevant Ninth Circuit precedent, courts may require prudential exhaustion when:
>
> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision;
>
> (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and
>
> (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Lopez-Campos*, 797 F. Supp. 3d at 778 (citing *United States v. Cal. Care Corp.*, 709 F.2d 1241, 1248 (9th Cir. 1983) (citing *McGee v. United States*, 402 U.S. 479, 484 (1971); *McKart v. United States*, 395 U.S. 185, 193–95 (1969))).

Applying these factors, this Court finds that all three weigh against requiring exhaustion. In so finding, this Court joins several other in this circuit that have reached the same conclusion in analogous cases. *E.g.*, *Echavvarria Morales v. Noem*, 2026 WL 100583, at *3 (N.D. Ohio Jan. 14, 2026); *Lopez-Campos*, 797 F. Supp. 3d at 778; *Puerto-Hernandez*, 2025 WL 3012033, at *7.

First, the issue raised in the Petition is purely legal in nature and does not require the agency to develop the record. The Petition requires the Court to interpret two statutes (Section 1226(a) and Section 1225(b)(2)(A)) to determine which applies to Petitioner. Matters of statutory interpretation belong historically within the province of the courts. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 413 (2024) ("[C]ourts need not and under the [Administrative Procedure Act (APA)] may not defer to an agency interpretation of the law simply because a statute is ambiguous.").

Second, there is nothing in the record that suggests that relaxing the exhaustion requirement here would encourage the deliberate bypass of the administrative scheme. Petitioner raises a constitutional challenge to his continued detention without a bond hearing. The Sixth Circuit has previously signaled that such challenges are beyond administrative review. *See Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006) ("[A]n alien's due process challenge generally does not require exhaustion (the BIA lacks authority to review constitutional challenges)[.]"); *accord Bangura v. Hansen*, 434 F.3d 487, 494 (6th Cir. 2006) ("Exhaustion of administrative remedies may not be required in cases of non-frivolous constitutional challenges to an agency's procedures.").

Third, administrative review is not likely to change Respondents' view that Section 1225(b)(2)(A) applies to Petitioner. BIA (the reviewing agency), in conjunction with the Department of Justice, has made clear its interpretation mandating detention of noncitizens like Petitioner during removal proceedings. *Puerto-Hernandez*, 2025 WL 3012033, at *7 ("It is simply

5

implausible that the BIA would change its position, regardless of the arguments set forth in this particular case, thus precluding meaningful review." (citing *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 229 (BIA 2025)).

Further, even if this Court were to find that prudential concerns warranted exhaustion, it could still choose to waive exhaustion when the "legal question is fit for resolution and delay means hardship, or when exhaustion would prove futile." *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000) (citation and internal quotation marks omitted); *see also Shearson*, 725 F.3d at 594 ("[T]here are some exceptions to the exhaustion doctrine. For example, exhaustion may not be required when the administrative remedy 'does not serve the purposes behind the exhaustion doctrine[ ],' if the 'administrative remedies are inadequate or not efficacious,' or 'where pursuit of administrative remedies would be a futile gesture.'" (citation omitted)).

Here, as discussed above, the legal question is fit for exhaustion and the pursuit of administrative remedies would almost certainly be a futile gesture. The Petition is just one—of what the Court can only estimate are thousands—of petitions seeking analogous relief because of BIA's and ICE's recent interpretative shift. Immigration courts across the country are denying bond hearings for noncitizens like Petitioner, claiming the courts lack jurisdiction under recent BIA guidance. This Court cannot think of anything more clearly amounting to a "futile gesture" than requiring Petitioner to spend time appealing the Immigration Court's decision to deny him a bond hearing to the very agency that passed down that unequivocal directive. *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 229 (BIA 2025) (holding that any individual who has ever entered the United States unlawfully and was later detained is no longer eligible for bond and is subject to mandatory detention under § 1225(b)(2)(A)). *See also Contreras-Lomeli v. Raycraft*, 2025 WL

6

2976739, at *4 (E.D. Mich. Oct. 21, 2025) ("Waiver based on futility is appropriate when an administrative agency 'has predetermined the disputed issue' by having a 'clearly stated position' that the petitioner is not eligible for the relief sought." (quoting *Cooper v. Zych*, 2009 WL 2711957, at *2 (E.D. Mich. Aug. 25, 2009))); *Barco Mercado v. Francis*, 2025 WL 3295903, at *12 (S.D.N.Y. Nov. 26, 2025) ("To force [Petitioner] to request a bond hearing from an immigration judge—which would be denied under the BIA's recent decision and, even if it were held, would result in release being denied under that decision—and then appeal that denial to the same BIA that has prevented immigration judges from hearing bond requests in the first place, all before allowing [Petitioner] to seek judicial review [of his detention]. . . would be 'Kafkaesque.'").

Accordingly, for the foregoing reasons, this Court concludes that prudential exhaustion is not required here.

**B. Petitioner Is Not Subject to Detention Under 8 U.S.C. § 1225(b)(2)**

Finally, turning to the merits of the Petition, this case concerns the applicability of the detention provisions at 8 U.S.C. § 1226(a) and 8 U.S.C. § 1225(b)(2). Respondents insist that Petitioner is subject to mandatory detention under Section 1225(b)(2), while Petitioner contends his detention is subject to Section 1226(a), which allows for discretionary release on bond.

This Court is hardly the first to address this issue. *See Barco Mercado*, 2025 WL 3295903, at *13 (listing 350 decisions that found for the habeas petitioner as of the date of that opinion). Notably, however, neither the Sixth Circuit nor the Supreme Court have directly reached whether Section 1226(a) or 1225(b)(2) applies to noncitizens like Petitioner, who entered the United States

undetected and have remained present here for several years.³ Absent any such controlling precedent, this Court joins the clear majority of courts across the county in finding that Section 1226(a) applies to Petitioner—not Section 1225(b)(2).

First and foremost, Respondents' interpretation stands in contrast to 8 U.S.C. § 1225's plain text. *See Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009) ("As with any question of statutory interpretation, our analysis begins with the plain language of the statute."). Section 1225(a)(1) defines an "applicant for admission" to the United States as "[a]n alien present in the United States who has not been admitted or who arrives in the United States." Section 1225(b)(2)(A) then provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." In other words, to trigger mandatory detention under Section 1225(b)(2)(A), three things must be true: the alien must be: (1) "an applicant for admission," (2) "seeking admission," and (3) "not clearly and beyond a doubt entitled to be admitted." *Kashranov v. Jamison*, 2025 WL 3188399, at *6 (E.D. Pa. Nov. 14, 2025).

Here, Respondents insist that all "applicants for admission" are also "seeking admission" for purposes of mandatory detention under Section 1225(b)(2). This interpretation, however, renders

---

³ This Court is aware of only two circuit courts that have reached this issue. *Compare Castanon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025) (preliminary ruling) (finding that analogous plaintiffs likely had the "better argument"—that section 1226(a) applies— "[b]ased upon the text and structure of the two provisions"), *with Buenrostro-Mendez v. Bondi*, 2026 WL 323330, at *12 (5th Cir. Feb. 6, 2026) (holding analogous petitioners were subject to detention under Section 1225(b)(2)). *But see Buenrostro-Mendez*, 2026 WL 323330, at *10 (Douglas, J., dissenting).

the term "seeking admission" entirely superfluous of "applicant for admission," circumventing the cardinal principle of statutory construction that instructs courts to give effect, if possible, to every clause and word of a statute. *See United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) ("[E]very clause and word of a statute should have meaning."); *see also Sumba v. Crowley*, 2025 WL 3126512, at *4 (N.D. Ill. Nov. 9, 2025) ("[T]he [c]ourt rejects as implausible the government's contention that two distinct terms in the same subparagraph—'applicant for admission' and 'an alien seeking admission'—somehow bear the *same* meaning even though they are (obviously) *different* terms." (emphasis in original)).

Further, "applicant for admission" is a term of art, specifically defined by Congress—"seeking admission" is not. Respondents' attempt to equate a defined term of art with the everyday meaning of "seeking admission" because the terms share a word misses the mark. *Digital Realty Tr., Inc. v. Somers*, 583 U.S. 149, 160 (2018) ("When a statute includes an explicit definition, we must follow that definition, even if it varies from a term's ordinary meaning." (quotations and citation omitted)); *see also Buenrostro-Mendez v. Bondi*, 2026 WL 323330, at *12 (5th Cir. Feb. 6, 2026) (Douglas, J., dissenting) ("Congress may . . . define a word or phrase [like 'admission'] in a specialized way" but "absent such [a definition], those whose lives are governed by law are entitled to rely on its ordinary meaning, not left to speculate about hidden messages." (citing *Feliciano v. Dep't of Transp.*, 605 U.S. 38, 45 (2025))).

"Seeking" "implies action[.]" *Lopez-Campos*, 2025 WL 2496379, at *6. "Seeking" requires something more than just passively being present in the United States. *See Francisco T. v. Bondi*, 2025 WL 3490809, at *5 (D. Minn. Sept. 5, 2025) ("[I]n general, a present participle is used to signal present and continuing action." (quoting *Westchester Gen. Hosp., Inc. v. Evanston Ins. Co.*,

9

48 F.4th 1298, 1307 (11th Cir. 2022))). As such, Respondents' interpretation also fails to give effect to Congress' choice to use the active term "seeking" in describing those immigrants covered by Section 1225(b)(2). *See Carr v. United States*, 560 U.S. 438, 448 (2010) ("Consistent with normal usage, we have frequently looked to Congress' choice of verb tense to ascertain a statute's temporal reach.").

Respondents' interpretation would also render Section 1226(a)'s recent amendment (the Laken Riley Act. Pub. L. No. 119-1, § 2, 139 Stat. 3, 3 (2025)), superfluous. *Chavez v. Dir. of Detroit Field Office*, 2025 WL 3187080, at *7 (N.D. Ohio Nov. 14, 2025) ("If, as the government argues, § 1226(a) only applied to admitted immigrants, Congress would not have had to carve out certain unadmitted immigrants using the Laken Riley Act. Further, if, as the government argues, § 1225(b)(2) mandates detention of all unadmitted immigrants, then it would be pointless for Congress to mandate the detention of a subset of those unadmitted immigrants using the Laken Riley Act.").

In response, Respondents offer only that "redundancies are common in statutory drafting" and "[t]he statutory language of 8 U.S.C. § 1226(c)—including the most recent amendment pursuant to the Laken Riley Act, see 8 U.S.C. § 1226(c)(1)(E), merely reflects a 'congressional effort to be doubly sure' that certain aliens are detained." (Doc. 3, at 30 citing *Barton v. Barr*, 590 U.S. 222, 239 (2020).) But where Respondents' interpretation requires the Court to overlook redundancies that make a recent amendment superfluous, Petitioner's interpretation plainly gives effect to each provision. "[As]the Supreme Court reminds us, if an interpretation of one provision 'would render another provision superfluous, courts presume that interpretation is incorrect.'" *Castanon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1062 (7th Cir. 2025) (preliminary

ruling) (quoting *Bilski v. Kappos*, 561 U.S. 593, 607–08 (2010). "[T]his presumption is 'strongest when an interpretation would render superfluous another part of the same statutory scheme,' as would be the case here." *Id.* (quoting *Marx v. Gen. Rev. Corp.*, 568 U.S. 371, 386 (2013)); *see also Henderson v. United States*, 568 U.S. 266, 281 (2013) (Scalia, J., dissenting) ("A rudimentary principle of textual interpretation—so commonsensical that it scarcely needs citation—is that if one interpretation of an ambiguous provision causes it to serve a purpose consistent with the entire text, and the other interpretation renders it pointless, the former prevails.").

If the plain text of the statute and its structure were not enough, Respondents' interpretation also ignores the Supreme Court's pronouncement in *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). In *Jennings*, the Supreme Court analyzed both Section 1226 and 1225(b), noting that Section 1225(b) "applies primarily to aliens seeking entry into the United States" and that Section 1226 "applies to aliens already present in the United States." *Id.* ("U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c).").

Lastly, Respondents' interpretation "disregards more than half a century of precedent enshrining into law the heightened protections applicable to noncitizens already living within our borders." *Rivero v. Mina*, 2026 WL 199319, at *3 (M.D. Fla. Jan. 26, 2026) (citing *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958) ("[O]ur immigration laws have long made a distinction between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality.")); *see also Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1260 (W.D. Wash. 2025) (explaining how the legislative history behind Section

1226 indicates that the statute applies to noncitizens that "reside in the United States but previously entered without inspection").

In the end, Respondents' interpretation seems best understood as a disagreement with certain bedrock principles of immigration law. Respondents may very well find that the immigration statutes, as they stand, lead to results that are incompatible with Respondents' desired outcome.[4] Unfortunately for Respondents, this Court is bound to apply the statutes as they are written—not as Respondents wish they were written. *Loper Bright Enters.*, 603 U.S. at 403 ("Courts interpret statutes, no matter the context, based on the traditional tools of statutory construction, not individual policy preferences."). The proper mechanism for Respondents to align these statutes with their objectives is through Congress—not through unilateral administrative interpretations of the laws.

Accordingly, for all the aforementioned reasons, this Court joins the clear majority of courts across the country that have refused to read words out of the statute, ignore superfluous language, downplay Supreme Court dicta, and disregard long-standing principles of immigration law, just to

---

[4] While Respondents seem to view the unequal treatment between noncitizens inspected at the border and noncitizens who have already effected an unauthorized entry as incompatible with immigration jurisprudence, this distinction does have support in the historical application of immigration law: "(1) bond has always been available to detained noncitizens already present in the United States; (2) as this practice exemplifies, government intrusions have always been tolerated at the border that would be intolerable in the interior, for the obvious reason that citizens and noncitizens alike expect to be able to go about their business without having to show that they are 'clearly and beyond doubt entitled to be admitted' if taken, or mistaken, for an otherwise inadmissible noncitizen; and (3) with only a little imagination, the government's and the majority's reading means that anyone present in this country at any time must carry the precise kinds of identification they would otherwise have only carried to the border for international travel, lest they be mistaken for an inadmissible noncitizen 'seeking admission' into the country." *Buenrostro-Mendez*, 2026 WL 323330, at *18 (Douglas, J., dissenting).

align the statutes with Respondents' policy preferences. Petitioner is subject to detention under 8 U.S.C. § 1226(a)—not 8 U.S.C. § 1225(b). As such, Petitioner's continued detention without a bond hearing is unlawful and he is entitled to habeas relief.

**CONCLUSION**

For all the aforementioned reasons, Alvaro Ramirez Moreno's Petition for Writ of Habeas Corpus is GRANTED. By 5:00 p.m. on Friday, February 27, 2026, Respondents shall either afford Petitioner the statutory process required under Section 1226(a), which includes a bond hearing, or release him from custody.

IT IS SO ORDERED.

PATRICIA A. GAUGHAN
United States District Judge

Date: 2/23/26